
**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>HAROLD W. DICKENS, III, dba LAW OFFICES OF HAROLD W. DICKENS, III, dba LAW OFFICES OF HAROLD W. DICKENS, III, P.C.,<br>　　　　　　Debtor. | BAP No. CC-21-1202-FSG<br><br>Bk. No. 2:19-bk-22970-BB<br><br>Adv. No. 2:20-ap-01177-BB |
| HAROLD W. DICKENS, III,<br>　　　　　　Appellant,<br>v.<br>KENNETH S. BRADLEY, MD, an individual; SOUTHERN CALIFORNIA PAIN CONSULTANTS, INC., a California corporation,<br>　　　　　　Appellees. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Sheri Bluebond, Bankruptcy Judge, Presiding

Before: FARIS, SPRAKER, and GAN, Bankruptcy Judges.

---

　　* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

The California superior court sanctioned attorney Harold W. Dickens, III for submitting false declarations on behalf of his clients while defending a defamation lawsuit brought by the appellees. Mr. Dickens filed for chapter 7[1] bankruptcy protection. The appellees sought to have the debt declared nondischargeable under § 523(a)(6) because it arose from a willful and malicious injury: filing the false declarations with the intent to defeat the defamation lawsuit. The bankruptcy court granted the appellees' motion for summary judgment based on the issue preclusive effect of the state court's judgment.

Mr. Dickens appeals, arguing that the bankruptcy court erred in determining that the underlying acts were both willful and malicious. He maintains that he did not knowingly file the false declarations and contends that the standard for granting the sanctions differed from the standard under § 523(a)(6).

We disagree with Mr. Dickens. The issues that the California superior court had to decide in order to impose sanctions on Mr. Dickens were identical to the issues before the bankruptcy court under § 523(a)(6). Among other things, the superior court necessarily found that Mr. Dickens

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

acted in bad faith under a subjective standard. We AFFIRM.

## FACTS

## A. The prepetition state court action and sanctions award

### 1. The underlying dispute

Dr. Kenneth S. Bradley is a medical doctor who specializes in pain medicine. Two of Dr. Bradley's former patients, Kashmir Stefani and Angela Margolis, posted Yelp reviews online that accused Dr. Bradley of sexually assaulting and sexually harassing them.

Dr. Bradley and his clinic, Southern California Pain Consultants, Inc. (collectively "Dr. Bradley"), sued Ms. Stefani and Ms. Margolis for defamation in California superior court. He alleged that they had colluded to post false Yelp reviews shortly after he had refused to continue prescribing powerful drugs for them.

Mr. Dickens initially represented both Ms. Stefani and Ms. Margolis. Later, Mr. Dickens withdrew as Ms. Margolis' counsel, and she thereafter represented herself.

### 2. Mr. Dickens' anti-SLAPP motion

On November 20, 2015, Mr. Dickens filed an anti-SLAPP[2] motion in

---

[2] "SLAPP" means "Strategic Lawsuits Against Public Participation." A cause of action against a defendant acting to further his "right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). The anti-SLAPP motion is on a statutory fast track, Cal. Civ. Proc. Code § 425.16(f), results in a stay of all discovery unless the court orders otherwise, Cal. Civ. Proc. Code § 425.16(g), and is

the superior court on behalf of both clients, in which he sought to dismiss Dr. Bradley's defamation case. In relevant part, the anti-SLAPP motion asserted that the Yelp reviews were protected as "statements prior to litigation or other official proceedings." The motion alleged that each client had consulted with "her attorney" before posting the Yelp reviews, so the postings were protected by the litigation privilege. Ms. Stefani's declaration, drafted by Mr. Dickens, expressly stated that: "On August 31, 2015, after reporting Dr. Bradley to the authorities and consulting my attorney in preparation for suing him, I posted the review about Dr. Bradley on Yelp." Ms. Margolis signed, and Mr. Dickens drafted and filed, a substantially similar declaration. In addition to seeking dismissal of the defamation lawsuit, they requested attorneys' fees totaling $14,000.

With the superior court's approval, Dr. Bradley deposed Ms. Stefani and Ms. Margolis in April 2016. Both women testified that they had not contacted counsel when they posted their Yelp reviews and that they did not consult with or employ Mr. Dickens or any other attorney until after Dr. Bradley sued them.

Dr. Bradley presented the deposition testimony to the superior court in his opposition to the anti-SLAPP motion.[3] After a hearing, the superior

decided on the pleadings and affidavits, Cal. Civ. Proc. Code § 425.16(b)(2).

[3] Mr. Dickens later claimed that, shortly before Ms. Stefani's deposition, she signed a supplemental declaration in which she admitted that the statement about consulting an attorney prior to posting the Yelp review was wrong. He points to this declaration as proof that he and Ms. Stefani attempted to correct the mistake. But

4

court held that the Yelp reviews did not implicate the litigation privilege and denied the anti-SLAPP motion, stating that "[t]he Yelp reviews had no functional relationship to planned litigation and made no mention of participating in litigation."

### 3. Dr. Bradley's motion for sanctions

Dr. Bradley then filed a motion for sanctions against Mr. Dickens, Ms. Stefani, and Ms. Margolis. He sought to recover $84,574.46 in attorneys' fees and costs that he had spent defending against the anti-SLAPP motion. Dr. Bradley contended that the anti-SLAPP motion was frivolous and based on the clients' false declarations (that Mr. Dickens knew to be false).

In response, Mr. Dickens argued on behalf of himself and Ms. Stefani that Dr. Bradley had failed to provide any evidence that the anti-SLAPP motion was frivolous, harassing, or brought in bad faith. He did not offer any declarations or other evidence, and he did not attempt to explain or justify his presentation of admittedly false testimony to the court.

The superior court issued a tentative ruling indicating that it was inclined to grant the sanctions motion. The court tentatively ruled that the anti-SLAPP motion was "frivolous and devoid of merit" and stated:

> [I]n light of the deposition testimonies of defendants, it is clear

according to Dr. Bradley, Mr. Dickens never filed or served the supplemental declaration and never mentioned it in his filings and oral arguments. At oral argument before this Panel, Mr. Dickens conceded that he did not file the supplemental declaration.

that the declarations submitted by defendants, which were drafted by defense counsel, were false, in bad faith, and solely intended to implicate the litigation privilege despite the fact that the privilege was not available to defendants. Had plaintiffs not sought to conduct discovery, defendants may well have prevailed on the motions based on these false declarations. The disingenuous nature of the declarations was revealed during discovery. No reasonable attorney would have submitted declarations which were knowingly false. The attorney clearly would have had information as to his first contact with defendants, which according to defendants themselves, were not before the Yelp posts. Therefore, the anti-SLAPP motions utilized false declarations and constituted frivolous and bad faith conduct. Any reasonable attorney would conclude that the motion was totally devoid of merit.

At the hearing on the motion, the court stated that "what pushed me over to grant attorney's fees is what appears to have been a deliberate and willful attempt to mislead both the court and the opposing party as to whether the litigation privilege was applicable based upon a contemplation of litigation by the defendants, who had conferred with an attorney."

The court took the matter under advisement. The court's minutes state that, later that day, the court granted the motion and adopted its tentative ruling as its final ruling.

Later, the superior court entered a written order granting the motion and imposing sanctions totaling $44,648.66 jointly and severally against Mr. Dickens, Ms. Stefani, and Ms. Margolis. The written order does not mention the tentative ruling and provided a slightly different explanation

6

for the ruling:

1.  To the extent the special motion to strike was based on the litigation privilege affirmative defense, it relied on false and misleading declarations provided by each of defendants and filed and submitted by their counsel, Harold W. Dickens, III. The declarations falsely stated that each of the Defendants was represented by their "Attorney" and were contemplating litigation at the time they made the Yelp postings which are the subject of the complaint in this case. Defendants' deposition testimony established that these representations were not true. No reasonable attorney would have filed a special motion to strike based on such false testimony.

2.  To the extent that Defendants' special motion to strike asserted that their Yelp postings concerned a matter of public interest and so fell within a framework of the anti-SLAPP law, the Court has previously agreed with that position. However, the complaint in this action and the pleadings and evidence filed in support and opposition to the motion demonstrate that it was or should have been known to Defendants and their attorney that Plaintiffs would be able to provide the "minimal showing" needed to satisfy the second prong of an anti-SLAPP motion analysis. By way of example, it was alleged in the complaint – and confirmed by evidence that was not disputed by Defendants – that they were each involuntarily discharged by Dr. Bradley after either failing or refusing to take urine tests to confirm their use of medications prescribed by Dr. Bradley. Further, Dr. Bradley alleged in his complaint, and subsequently confirmed by evidence, that he disputed Defendants' claims in their Yelp postings that he had sexually harassed them. No reasonable attorney would have filed a special motion to strike in such circumstances, as it was evident that Plaintiffs would be able to make a minimal showing of a probability of prevailing on their defamation

7

claims. Filing such a motion represented a waste of attorney time and judicial resources, and resulted in great and unnecessary cost to the Plaintiffs in this action.

No one appealed the denial of the anti-SLAPP motion or the award of sanctions.[4]

## B. Mr. Dickens' bankruptcy case

Mr. Dickens did not pay the sanctions award. In December 2019, he filed a chapter 7 petition and scheduled the sanctions award as an unsecured claim of $57,000.

Dr. Bradley filed a timely adversary proceeding pursuant to § 523(a)(6), contending that the anti-SLAPP sanctions award and other sanctions imposed by the superior court were not dischargeable.[5] Later, he moved for summary judgment on all of his § 523(a)(6) claims. As to the anti-SLAPP sanctions, he argued that Mr. Dickens' filing of the false declarations that claimed the litigation privilege was a willful and malicious act within the meaning of § 523(a)(6).

Mr. Dickens opposed the motion and filed a cross-motion for summary judgment. He argued that Dr. Bradley had failed to establish his tortious conduct or demonstrate willful and malicious acts giving rise to the debt. He also argued that the superior court never considered the

---

[4] The superior court eventually entered judgments on the merits in favor of Dr. Bradley. Ms. Margolis lost by default; Ms. Stefani lost after a bench trial.

[5] According to Dr. Bradley, the superior court sanctioned Mr. Dickens ten times between 2016 and 2019, including the anti-SLAPP sanctions, for a total of $74,463.66.

"willful and malicious" standard when imposing sanctions for the anti-SLAPP motion. He contended that a triable issue of fact existed as to his knowledge of the accuracy of the statements in the declarations. He claimed that his negligence and unprofessionalism were excused by his illness, extensive travel in search of health care, and inexperience. He said that he consulted with another attorney as to the anti-SLAPP motion, so he was relying on the advice of counsel. He also blamed unnamed members of his staff for drafting the declaration and Ms. Stefani for not noticing the mistake.

In reply, Dr. Bradley argued that Mr. Dickens committed an intentional tort: abuse of process. He contended that Mr. Dickens' conduct was willful because Mr. Dickens subjectively intended to injure Dr. Bradley by filing a false declaration to have the defamation lawsuit dismissed and increase Dr. Bradley's litigation expenses. He argued that the conduct was malicious because the anti-SLAPP motion was frivolous and filed with the intent to deceive the superior court. He also argued that Mr. Dickens was attempting to improperly relitigate the superior court's findings.

Before the hearing on the cross-motions, the bankruptcy court issued a tentative ruling. It stated:

> [T]he state court adopted its tentative ruling as its final ruling. In the tentative ruling, the court specifically found that the declarations drafted by defendant were "false, in bad faith, and solely intended to implicate the litigation privilege despite the fact that the privilege was not available to defendants. . . . The

9

disingenuous nature of the declarations was revealed during discovery. No reasonable attorney would have submitted declarations which were **knowingly** false." It is clear from this language that the state court found that defendant knew the declarations were false and purposefully used them with the intention of inflicting harm on the plaintiffs. This is sufficient to support a finding that the sanctions imposed for this conduct ($44,648.66) are necessarily nondischargeable under section 523(a)(6).

At the hearing, the bankruptcy court said that it would not revisit the superior court's findings. It stated that the superior court considered willfulness and malice and "made the findings and . . . there was an adequate opportunity for the defendant to be heard on that point and that was adequately looked into by state court, so I don't think that there's a reason under equity or the facts of this case to revisit that." It held that the superior court's findings were entitled to issue preclusive effect and granted summary adjudication as to the first cause of action for the anti-SLAPP sanctions.

The court later entered a written order declaring the anti-SLAPP sanctions nondischargeable under § 523(a)(6) and denying Mr. Dickens' cross-motion for summary judgment. The bankruptcy court denied summary judgment on the remaining claims for relief. Later, at Dr. Bradley's request, the court dismissed the remaining claims and issued a final judgment.

Mr. Dickens timely appealed.

10

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in holding that the anti-SLAPP sanctions award was nondischargeable under § 523(a)(6).

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's decisions to grant summary judgment and to except a debt from discharge under § 523(a)(6). *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

"We also review de novo the bankruptcy court's determination that issue preclusion was available. If issue preclusion was available, we then review the bankruptcy court's application of issue preclusion for an abuse of discretion." *In re Plyam*, 530 B.R. at 461 (quoting *Black v. Bonnie Springs Fam. Ltd. P'ship (In re Black)*, 487 B.R. 202, 210 (9th Cir. BAP 2013)).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without

support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

Under Civil Rule 56(a), made applicable by Rule 7056, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). We must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in his favor. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

In response to the motion for summary judgment, Mr. Dickens offered evidence that, if believed, would negate some of the elements of a nondischargeability claim under § 523(a)(6). In the face of this evidence, we can affirm the bankruptcy court's summary judgment only if the superior court decided those issues and the doctrine of issue preclusion bars Mr. Dickens from relitigating them. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991) (holding that issue preclusion applies in actions under § 523(a)).

While a judgment for litigation sanctions will often be nondischargeable, *see, e.g.*, *Papadakis v. Zelis (In re Zelis)*, 66 F.3d 205, 209 (9th Cir. 1995) (holding that a sanctions award was nondischargeable where the state court had found that the debtor had intentionally filed a frivolous appeal, necessarily harming the adverse parties), that is not

always the case. For example, we have stated that "[s]ection 523(a)(6) does not make 'contempt' sanctions nondischargeable *per se*, and neither does any other subpart of section 523(a). Whether contempt sanctions are nondischargeable accordingly depends not on whether they are labeled as 'contempt,' but on whether the conduct leading to them was 'willful and malicious.'" *Suarez v. Barrett (In re Suarez)*, 400 B.R. 732, 737 (9th Cir. BAP 2009), *aff'd*, 529 F. App'x 832 (9th Cir. 2013). A court can hold that sanctions arising out of an anti-SLAPP motion are "willful and malicious" "only after analyzing the evidence to determine the plaintiff's intent." *Hamm v. Burcar (In re Hamm)*, BAP No. CC-20-1049-LSF, 2020 WL 5814362, at *7 (9th Cir. BAP Sept. 29, 2020); *see also Healy v. Rose (In re Healy)*, BAP No. EC-13-1200-PaJuKu, 2015 WL 3407237, at *7 (9th Cir. BAP May 27, 2015) (affirming the bankruptcy court's decision that state court's ruling was entitled to issue preclusive effect and anti-SLAPP sanctions were nondischargeable as "willful and malicious" under § 523(a)(6)), *aff'd*, 689 F. App'x 516 (9th Cir. 2017).

Thus, we must delve into the details of issue preclusion.

## A.     Issue preclusion in proceedings under § 523(a)(6)

The bankruptcy court must apply the forum state's law of issue preclusion. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). Thus, we apply California preclusion law.

Under California law, issue preclusion applies if: (1) the issue sought to be precluded from relitigation is identical to that decided in a former

13

proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding. *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990). California law further cautions that courts may give preclusive effect to a judgment "only if application of preclusion furthers the public policies underlying the doctrine." *In re Harmon*, 250 F.3d at 1245.

The party asserting preclusion bears the burden of establishing the threshold requirements. *Id.* This means providing "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996).[6] Ultimately, "[a]ny reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect." *Id.*

There is no dispute about the second through sixth elements of this test. All of the issues that the superior court decided were actually litigated; Mr. Dickens had a full and fair opportunity to contest each of them and did in fact contest them (albeit ineptly). The superior court made no

---

[6] Dr. Bradley requests that we dismiss this appeal because Mr. Dickens failed to properly cite the excerpts of record in his opening brief. Although we agree that Mr. Dickens could have provided clearer citations, the Panel did not have such difficulty understanding Mr. Dickens' citations that it would warrant dismissal. We DENY Dr. Bradley's request for dismissal.

superfluous or unnecessary findings. The anti-SLAPP sanctions judgment is final and on the merits. Mr. Dickens was a party to the superior court proceeding. Applying issue preclusion to the judgment is consistent with public policy.

The dispute is whether the issues that the superior court decided are identical to the issues that the bankruptcy court confronted. This requires us to compare the elements of a claim under § 523(a)(6) with the elements of a claim for anti-SLAPP sanctions.

**B.     The elements of a claim under § 523(a)(6) for willful and malicious injury by the debtor**

Section 523(a)(6) excepts from discharge any debt arising from "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" The creditor must prove both willfulness and malice. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). The willfulness analysis is separate from the malice analysis, and the two elements must not be conflated. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146 (9th Cir. 2002).

The "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Id.* at 1142; *see Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008) ("A 'willful' injury is a 'deliberate or intentional **injury**, not merely a deliberate or intentional **act** that leads to injury.'" (citation omitted)). This analysis

requires an inquiry into the debtor's subjective state of mind. *See In re Su*, 290 F.3d at 1145-46. In other words, it is not enough to prove that the debtor acted intentionally and caused an injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

"A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001) (quoting *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997) (en banc)).

## C.    The elements of an anti-SLAPP sanctions claim

The anti-SLAPP statute, California Code of Civil Procedure ("CCP") section 425.16(c)(1), provides that:

> [A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is **frivolous or is solely intended to cause unnecessary delay**, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, **pursuant to Section 128.5**.

Cal. Civ. Proc. Code § 425.16(c)(1) (emphases added).

The "reference to section 128.5 in section 425.16, subdivision (c) means a court must use the procedures and apply the substantive standards of section 128.5 in deciding whether to award attorney fees under the anti-SLAPP statute." *Moore v. Shaw*, 116 Cal. App. 4th 182, 199 (2004), *as modified* (Mar. 26, 2004) (citation omitted); *see Carpenter v. Jack in*

16

*the Box Corp.*, 151 Cal. App. 4th 454, 469 (2007) ("The import of section 425.16 is that a court must use the procedures and apply the substantive standards of section 128.5 in deciding whether to award attorney fees under the anti-SLAPP statute." (cleaned up)).

CCP section 128.5(a), as it was in effect from January 1, 2015 to August 6, 2017, provides that a "trial court may order a party, the party's attorney, or both to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." Thus, sanctions are appropriate where the challenged conduct was undertaken in bad faith **and** was **also either** frivolous **or** solely intended for delay.

Although there was some confusion in the case law, the better view (and the view that the California legislature has endorsed) is that CCP section 128.5 requires a finding of both subjective bad faith and objective frivolousness.[7] The California Court of Appeal has considered the language

---

[7] Prior to the 2017 amendment to CCP section 128.5, some (but not all) of the California courts of appeal held that the statute does not require a finding of subjective bad faith. *See, e.g.*, *San Diegans for Open Gov't v. City of San Diego*, 247 Cal. App. 4th 1306, 1318 (2016) (stating that "one purpose of section 128.5 was to eliminate the subjective standard and impose an objective standard" and holding that "the trial court erred by concluding the lack of evidence of subjective bad faith by [appellant] or its counsel required denial of the sanctions motion"); *On v. Cow Hollow Props.*, 222 Cal. App. 3d 1568, 1575 (1990) ("But the use of the disjunctive in section 128.5, we think, clearly indicates that sanctions can be based either on a finding of a bad faith action or 'tactics that are frivolous or solely intended to cause unnecessary delay.'"). But other courts of appeal rejected this interpretation and required proof of subjective bad faith. *See, e.g.*, *Dolan v. Buena Eng'rs, Inc.*, 24 Cal. App. 4th 1500, 1505-06 (1994) ("[T]he better reasoned

of the statute and stated that

> there is no room to doubt that bad faith is required under the present formula. The first clause of the charging language refers to "bad faith actions or tactics," a phrase to which everything that follows is grammatically subject. Thus, an action or tactic may be subject to sanctions if it is in bad faith **and** is either frivolous or solely intended to cause unnecessary delay. . . .
>
> [I]f the action was taken solely to harass or delay, it would support a finding of bad faith. If its only vice is lack of merit, it would not.

*Javor v. Dellinger*, 2 Cal. App. 4th 1258, 1261-62 (1992). Later, the Court of Appeal reiterated the subjective bad faith requirement:

> Whether an action is frivolous is governed by an objective standard: any reasonable attorney would agree it is totally and completely without merit. There must also be a showing of an improper purpose, i.e., subjective bad faith on the part of the attorney or party to be sanctioned. . . .
>
> Section 128.5 requires much more than a party acting with "no good reason" to justify an award of sanctions. There must be a

decisions decided under the current statute require a showing not only of a meritless or frivolous action or tactic, but also of bad faith in taking the action or tactic.").

In 2017, the California legislature amended CCP section 128.5 in order to (among other things) confirm that the statute always required subjective bad faith. *See In re Marriage of Sahafzadeh-Taeb & Taeb*, 39 Cal. App. 5th 124, 134 (2019) (noting "the confusion caused by *San Diegans*" and discussing the legislature's urgent action to clarify that CCP section 128.5 requires subjective bad faith). The legislative history states that "the standard applied in Section 128.5 is a subjective bad faith standard. . . . [T]his bill makes a technical correction to clarify that sanctions for actions and tactics under Section 128.5 must made in subjective bad faith—like it has always been interpreted." Cal. Bill Analysis, A.B. 984 Assem., 4/25/2017.

showing not only of a meritless or frivolous action or tactic, but also of bad faith.

*Levy v. Blum*, 92 Cal. App. 4th 625, 635-36 (2001) (citations omitted); *see also In re Marriage of Sahafzadeh-Taeb & Taeb*, 39 Cal. App. 5th at 141 (discussing the legislative history of CCP section 128.5 and holding that an attorney can be sanctioned under CCP section 128.5 for frivolous and bad faith conduct, where "bad faith" is described as "committed with an improper motive, such as to harass or manipulate opposing counsel or the court"); *Jespersen v. Zubiate-Beauchamp*, 114 Cal. App. 4th 624, 633-34 (2003) (affirming trial court's decision not to award anti-SLAPP sanctions to prevailing plaintiff because "there must be a showing the action or tactic was meritless or frivolous **and** that it was pursued in bad faith, and whether the action is taken in bad faith must be judged by a subjective standard").

The California Court of Appeal has very recently reaffirmed the rule that "[c]onduct meriting sanctions under this standard [of CCP sections 128.5 and 425.16] must be objectively frivolous and subjectively undertaken in bad faith." *Catlin Ins. Co. v. Danko Meredith L. Firm, Inc.*, 73 Cal. App. 5th 764, 778 (2022) (citations omitted), *review denied* (Apr. 13, 2022).

In other words, a finding of subjective "bad faith" is essential to the imposition of sanctions under CCP section 425.16.

**D.     Comparison of elements of § 523(a)(6) and anti-SLAPP sanctions**

**1.     Willfulness**

"Willfulness" under § 523(a)(6) depends on the subjective intent or subjective knowledge of the sanctioned party. Similarly, sanctions under CCP section 425.16 require "a finding of subjective bad faith, i.e., a showing of an improper purpose[.]" *Orange Cnty. Dep't of Child Support Servs. v. Super. Ct.*, 129 Cal. App. 4th 798, 804 (2005) (cleaned up). The California Court of Appeal has stated that,

> [i]n the context of [CCP section 128.5], "bad faith" means simply that the action or tactic is being pursued for an improper motive. Thus, if the court determines that a party had acted with the intention of causing unnecessary delay, or for the sole purpose of harassing the opposing side, the improper motive has been found, and the court's inquiry need go no further.

*Summers v. City of Cathedral City*, 225 Cal. App. 3d 1047, 1072 (1990).

The superior court's express findings include a finding of bad faith. In its tentative ruling, the court said that the declarations were "disingenuous," "in bad faith," and "knowingly false." At the hearing, the court orally stated that it saw "what appears to have been a deliberate and willful attempt to mislead both the court and the opposing party as to whether the litigation privilege was applicable . . . ." Although the court did not repeat these comments in its final written ruling, the superior court's minutes state that the court would adopt its tentative ruling as its final ruling.

20

More importantly, however, the doctrine of issue preclusion is not limited to a court's express findings. The findings that the court had to make in order to support its judgment are also entitled to issue preclusive effect, even if the court did not expressly make those findings:

> It is a general rule that a judgment or decree that **necessarily affirms** the existence of any fact is conclusive on the parties or their privies whenever the existence of that fact is again in issue between them, not only when the subject matter is the same but also when the point comes incidentally in question in relation to a different matter, in the same or any other court. . . . **Any fact or matter that was required to be established or passed on to sustain the judgment is concluded by it. Matters put in issue are concluded although not expressly mentioned in the judgment, if it determines them by necessary implication.**

*Garcia v. Garcia*, 148 Cal. App. 2d 147, 153-54 (1957) (emphases added); *see also McManus v. Bendlage*, 82 Cal. App. 2d 916, 923 (1947) ("A determination in a prior action as to relative rights and duties of a party to a contract in controversy is conclusively fixed by the judgment in so far as such rights and duties were within the issues raised and were actually **or by necessary inference adjudicated**." (emphasis added)). Thus, for example, a judgment based on a jury verdict has issue preclusive effect on every element of the claim, even an element that the special verdict form did not cover. *See Howell v. Law Offices of Andrew S. Bisom (In re Howell)*, BAP Nos. CC-20-1172-SGF, CC-20-1218-SGF, 2021 WL 1328588, at *7 (9th Cir. BAP Apr. 9, 2021) ("When an element is essential to entry of judgment, it necessarily follows that if judgment is rendered the element was actually litigated.

Issues are 'necessarily decided' so long as they are at least somewhat necessary to the decision." (citations omitted)).

In this case, California law is clear: in order to sanction Mr. Dickens under CCP sections 425.16 and 128.5, the superior court necessarily had to find that he acted in subjective bad faith. Mr. Dickens was not entitled to relitigate the issue of his subjective state of mind in the bankruptcy court.

### 2.    Malice

The superior court's findings also satisfy the elements of malice. Those findings establish "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Jercich*, 238 F.3d at 1209.

Mr. Dickens has waived any argument concerning the "malice" element. Although the opening brief makes general references to "willful and malicious" injury, Mr. Dickens only addresses the "willful" prong in any depth and ignores the "malicious" prong. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

Even if Mr. Dickens had not waived this issue, we would hold that the element was met.

First, Mr. Dickens engaged in a wrongful act. He drafted and submitted false declarations of two of his clients to support his anti-SLAPP motion. If successful, that motion would not only have dismissed Dr. Bradley's defamation case but would also have resulted in an

assessment of fees and costs against Dr. Bradley. The superior court found that the false statements were knowing, disingenuous, and made in bad faith. As the superior court noted, Mr. Dickens should have known when he was contacted by his clients and when he began representing them.

Second, he acted intentionally. He meant to file the declarations.

Third, this act necessarily caused injury. The anti-SLAPP motion necessarily delayed the case, and Dr. Bradley had no choice but to respond and incur attorneys' fees.

Fourth, he acted without just cause or excuse. There is no possible justification for filing a knowingly false declaration in court.

### 3. Tortious act

Contrary to Mr. Dickens' contention, the bankruptcy court correctly held that Mr. Dickens' conduct was an abuse of process, which is an intentional tort under California law.

We have stated that "§ 523(a)(6) is predicated on the existence of an intentional tort. Whether there exists an intentional tort is typically informed by state law." *Cal. Cap. Ins. Co. v. Riley (In re Riley)*, BAP No. CC-15-1379-TaLKi, 2016 WL 3351397, at *3 (9th Cir. BAP June 8, 2016) (citation omitted).

The Ninth Circuit has held that "[f]iling a frivolous appeal is conduct akin to malicious prosecution and abuse of process." *In re Zelis*, 66 F.3d at 209; *see also McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 607 (9th Cir. BAP 1998) ("A debt incurred by abuse of process may present a cause of

23

action under § 523(a)(6) either as punitive tort damages or as a sanction.").

We see no reason why the prosecution of a frivolous anti-SLAPP motion requesting dismissal should be treated differently from the filing of a frivolous appeal. To state a claim for abuse of process under California law, "there must be an allegation of 'some misuse of the process which is beyond its scope . . . or a willful act in the use of the process not proper in the regular conduct of the proceeding.'" *In re Barrack*, 217 B.R. at 607 (quoting *Muller v. Muller*, 206 Cal. App. 2d 731 (1962)). This fits the facts of this case, where the superior court found that Mr. Dickens submitted false and deceitful declarations.

## CONCLUSION

Mr. Dickens deserved the sanctions that the superior court imposed. *Cf. Computer Prepared Accounts, Inc. v. Katz*, 235 Cal. App. 3d 428, 438 (1991) ("Without a doubt submitting forged documents to a trial court is sufficient indication of 'bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay.'"). We hold that Mr. Dickens is not entitled to discharge those sanctions in bankruptcy. We AFFIRM in all respects.